No. 25-40401

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

NELLY ARIZBETH SANCHEZ-TORRES,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

―――――――――

**BRIEF FOR APPELLANT**

―――――――――

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas
Attorney for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002
Telephone: (713) 718-4600

Case: 25-40401    Document: 23    Page: 2    Date Filed: 11/13/2025

# CERTIFICATE OF INTERESTED PERSONS

United States v. Nelly Arizbeth Sanchez-Torres,
No. 25-40401

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1. District Judge: Hon. David S. Morales

2. Appellant: Nelly Arizbeth Sanchez-Torres

3. Appellant's Counsel: Federal Public Defender Philip G. Gallagher (appeal); and Assistant Federal Public Defender Francisco Morales (trial).

4. Co-Defendant: Cindy Tamara Hinojosa.

5. Co-Defendant's Counsel: Fred Jimenez (trial); and David Cano (appeal).

6. Material Witness: Yeimy Yaneth Delgado De Menjivar.

7. Counsel for Material Witness: Gabriel R. Salais.

8. Appellee: United States of America.

9. Appellee's Counsel: United States Attorney Nicholas J. Ganjei; former United States Attorney Alamdar S. Hamdani; and Assistant United States Attorneys Joseph F. Griffith (trial) and Carmen Castillo Mitchell (appeal).

## CERTIFICATE OF INTERESTED PERSONS – (cont')

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

s/ *Philip G. Gallagher*
PHILIP G. GALLAGHER

## REQUEST FOR ORAL ARGUMENT

Nelly Arizbeth Sanchez-Torres requests oral argument. This appeal presents the fact-intensive question of whether the warrantless stop of her vehicle by Border Patrol Agents violated the Fourth Amendment. Oral discussion of the facts and the applicable precedent would benefit the Court.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ...................................................................ii

Request for Oral Argument ...........................................................................iv

Table of Citations............................................................................................ v

Statement of Jurisdiction .............................................................................. 1

Statement of the Issue................................................................................... 2

Statement of the Case .................................................................................. 3

Summary of the Argument ........................................................................... 10

Argument....................................................................................................... 11

    **ISSUE RESTATED:** The district court erred in denying Ms. Sanchez-Torres's motion to suppress because the Border Patrol Agents who stopped the vehicle she was driving lacked reasonable suspicion that her vehicle was involved with illegal activities. ................................................. 11

    A.  Standard of review................................................................................ 11

    B.  Legal background.................................................................................. 11

    C.  The border patrol agents lacked reasonable suspicion to stop the SUV driven by Ms. Sanchez-Torres ........................................ 13

    D.  The evidence derived from the stop must be suppressed.......................... 17

Conclusion ................................................................................................... 18

Certificate of Service .................................................................................. 19

Certificate of Compliance............................................................................ 20

## TABLE OF CITATIONS

**Page(s)**

### CASES

*Ornelas v. United States*, 517 U.S. 690 (1996) .......................................... 11

*United States v. Alvarado-Zarza*, 782 F.3d 246
 (5th Cir. 2015) ............................................................................................. 17

*United States v. Arvizu*, 534 U.S. 244 (2002) ........................................... 11

*United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) ........................ 7-8, 11-13, 16

*United States v. Cervantes*, 797 F.3d 326
 (5th Cir. 2015) ......................................................................................... 12-13

*United States v. Chavez-Chavez*, 205 F.3d 145
 (5th Cir. 2000) ............................................................................................. 13

*United States v. Cortez*, 449 U.S. 411 (1981) ........................................ 11-12

*United States v. Cotton*, 722 F.3d 271
 (5th Cir. 2013) ............................................................................................. 17

*United States v. Escamilla*, 560 F.2d 1229
 (5th Cir. 1977) ............................................................................................. 13

*United States v. Hill*, 752 F.3d 1029
 (5th Cir. 2014) ............................................................................................. 12

*United States v. Jacquinot*, 258 F.3d 423
 (5th Cir. 2001) ............................................................................................. 13

*United States v. Melendez-Gonzalez*, 727 F.2d 407
 (5th Cir. 1984) ......................................................................................... 13, 16

*United States v. Moreno-Chaparro*, 180 F.3d 629
 (5th Cir. 1998) ............................................................................................. 13

**TABLE OF CITATIONS – (cont'd)**

**Page**

**CASES – (cont'd)**

*United States v. Nichols*, 142 F.3d 857
  (5th Cir. 1998) ................................................................................ 11

*United States v. Olivares-Pacheco*, 633 F.3d 399
  (5th Cir. 2011) ........................................................................... 13, 15

*United States v. Orozco*, 191 F.3d 578
  (5th Cir. 1999) ................................................................................ 13

*United States v. Rangel-Portillo*, 586 F.3d 376
  (5th Cir. 2009) ........................................................................... 11, 13

*United States v. Soto*, 649 F.3d 406
  (5th Cir. 2011) ................................................................................ 15

*United States v. Zavala*, 541 F.3d 562
  (5th Cir. 2008) ................................................................................ 11

**CONSTITUTIONAL PROVISION**

U.S. Const. amend. IV ............................................................... iv, 10-11

**STATUTES AND RULES**

8 U.S. C. § 1324(a)(1)(A)(ii) ...................................................... 3

8 U.S. C. § 1324(a)(1)(A)(v)(I) ................................................... 3

8 U.S. C. § 1324(a)(1)(A)(v)(II) .................................................. 3

8 U.S. C. § 1324(a)(1)(B)(i) ........................................................ 3

28 U.S.C. § 1291 ......................................................................... 1

**TABLE OF CITATIONS – (cont'd)**

**Page**

**STATUTES AND RULES – (cont'd)**

Fed. R. App. P. 4(b)(1) ........................................................................ 1

5th Cir. R. 28.2.1 .............................................................................. ii

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of Texas entered judgment of conviction and sentence in this case on June 25, 2025. Ms. Sanchez-Torres timely filed notice of appeal on June 30, 2025. *See* Fed. R. App. P. 4(b)(1). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court erred in denying Ms. Sanchez-Torres's motion to suppress because the Border Patrol Agents who stopped the vehicle she was driving lacked reasonable suspicion that her vehicle was involved with illegal activities.

## STATEMENT OF THE CASE

On November 20, 2025, Ms. Sanchez-Torres, along with co-defendant Cindy Tamara Hinojosa, was charged with one count of conspiring to transport an undocumented alien within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), and § 1324(a)(1)(B)(i) (Count 1) and one count of transporting an undocumented alien within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and 1324(a)(1)(B)(i) (Count 2). ROA.24-25. The charges arose from a single incident on October 23, 2024, when U.S. Border Patrol stopped a Dodge Journey SUV driven by Ms. Sanchez-Torres, in which Ms. Hinojosa was in the front passenger seat and Ms. Yeimy Yaneth Delgado De Menjivar, a citizen of El Salvador who was illegally in the United States, was in the rear passenger seat. ROA.359 (PSR ¶ 5).

On December 3, 2024, Ms. Sanchez-Torres filed a motion to suppress the fruits of the border patrol stop. ROA.34-38. In it, she argued that the agents who stopped her on the highway did so without reasonable suspicion. *Id.* The district court permitted co-defendant Hinojosa to join Ms. Sanchez-Torres's motion. ROA.71. The government opposed the motion to suppress. ROA.42-49.

On January 24, 2025, the district court held a hearing on the motion as to both defendants. ROA.151-274. The government presented the testimony of the two

3

Border Patrol Agents involved in the stop, and the defense presented the testimony of Ms. Delgado De Menjivar, the rear passenger in the vehicle. ROA.153.

Border Patrol Agent Samantha Benavides testified that she had been a Border Patrol Agent for 18 months. ROA.9. When she started her shift that day, her supervisors had advised her that there had been a group of aliens in a particular area. ROA.163. She and her colleague, Agent Andres Lozano, had searched the area for several hours and "had found stuff like clothes and sign[s] of the group, which is undocumented citizens." ROA.163. She and Agent Lozano then parked their separate vehicles alongside but perpendicular to Highway 16, which route she testified is well known for alien smuggling. ROA.163-64, 192.

A dirty SUV passed by driving north, and the passenger and driver "looked straight." ROA.165, 171. Agent Benavides then decided to follow the SUV, and the SUV decreased speed. ROA.165. Agent Benavides passed the SUV by driving in the lane for on-coming traffic. ROA.167, 179. While doing so, she saw the driver, passenger, and a baby car seat in the rear. ROA.167. When she radioed Agent Lozano that she had seen two adults, he advised that he had seen three. ROA.167.

After passing the SUV, Agent Benavides pulled over to the side of the road, and Agent Lozano then stopped the SUV with Agent Benavides assisting. ROA.168. Agent Benavides estimated that the stop occurred about 80 miles from the border with Mexico, ROA.168, and about 5 miles from where she had first sighted the SUV,

4

ROA.188. (In its Order, the district court found that the distance was closer to 66 miles from the border. ROA.76.)

Agent Lozano testified that he had also been employed as a Border Patrol Agent for about 18 months. ROA.205. He testified that he had been notified at the start of his shift of the presence of a group of illegal aliens in the area, so he had spent three to four hours looking for them. ROA.208-09. After not finding any aliens, he drove north to watch traffic. ROA.209. While he was parked, a gray SUV passed driving north and "the driver and passenger, mainly the passenger, were looking straight ahead without making any attempt to look in my direction." ROA.209. Agent Lozano later clarified that, due to his positioning, he had not been able to see the driver's face at all. ROA.224. He had not previously seen that vehicle in the area when searching for hours that day for aliens. ROA.223.

Agent Benavides then followed the SUV in her vehicle, with Agent Lozano following behind her. ROA.211. As Agent Benavides passed the SUV in the lane for oncoming traffic, she radioed Agent Lozano to tell him that she had seen a driver, passenger, and baby carrier in the car. ROA.213. Agent Lozano responded that he had seen a "third individual in the back seat which [sic] raised their arms playing with their hair – maybe playing with the hair." ROA.214. Later, upon questioning from the court, Agent Lozano expanded: "I observed a third individual in the rear seat once the individual raised their hands up, kind of like playing with their hair or trying to avoid

5

being seen." ROA.248. Agent Lozano did not explain how the passenger raising her hands supported the inference that she was trying to avoid being seen, and he admitted that neither he nor Agent Benavides had ever noted any attempt by the passenger to hide from view in their contemporaneous written reports. ROA. 250-51. While continuing to follow the SUV, Agent Lozano saw "minimal swerving," in which the SUV touched the lines on either side of its lane. ROA.214-215. He also saw the front passenger "slightly turn[] back towards the back of the vehicle," ROA.215, and the driver "looked around the mirrors, the side mirrors, the rearview mirror, and even at the passenger and communicating with each other." ROA.239. He also saw that the SUV had reduced its speed when Agent Benavides had begun her pursuit. ROA.241.

Agent Lozano then initiated a vehicle stop in order to conduct an immigration inspection. ROA.216.

Yeimy Yaneth Delgado De Menjivar testified on behalf of the defendants. She identified Nelly Arizabeth Sanchez-Torres as the driver and Cindy Tamara Hinojosa as the passenger in the car in which she was stopped on October 23, 2024. ROA.197-98. She also testified that, prior to the stop, the driver was driving normally, without unusual movements, and not speeding. ROA.199. She testified that she was sitting in the rear passenger seat normally, looking out the window. ROA.201. She also testified that the two women in the front seat had been speaking to each other in English, so that she could not understand what they were saying to each other. ROA.202-03.

6

The district court entered a written order denying the defendants' motion to suppress. ROA.71-87. In doing so, the district court considered each of the eight factors listed by the Supreme Court in *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975). ROA.75. Those factors are:

> (1) proximity to the border; (2) characteristics of the area; (3) usual traffic patterns; (4) agent's previous experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle; (7) information about recent illegal trafficking in aliens or narcotics in the area; and (8) the number, appearance, and behavior of the passengers.

ROA.75 (citation omitted). Ultimately, the district court concluded that, while the case presented a "close call," ROA.71, the government had "minimally met its burden to establish by a preponderance of the evidence that the roving stop was supported by reasonable suspicion." ROA.75.

The court found that only three of these eight factors favored the government. First, the district court found that the characteristics of the area weighed in favor of reasonable suspicion because testimony established that the stop occurred on part of Highway 16 "well known" for smuggling and transporting undocumented aliens. ROA.77. Second, the court found that there was evidence of recent illegal trafficking in the area because the testifying agents had been alerted to such by their supervisors and then had confirmed that information when they found clothes at a nearby ranch hours before the stop of Ms. Sanchez-Torres's vehicle. ROA.84. Lastly, the court

found that the behavior of the passengers weighed "slightly" toward reasonable suspicion because the two agents saw different numbers of persons in the car before the stop and because Agent Lozano testified that the rear passenger "appeared as if she was attempting to avoid being seen." ROA.86. The district court recognized that neither agent had described any occupant of the vehicle as attempting to hide in their contemporaneous written reports, but it credited the hearing testimony as to this point. ROA.86 n.21.

The district court found that the remaining five *Brignoni-Ponce* factors did not weigh in favor of reasonable suspicion. Specifically, the court found that the stop took place more than 50 miles from the international border, ROA.76; that there was no evidence that the SUV's driving in the area was inconsistent with usual traffic patterns, ROA.77-78; that the agents had only 18 months of experience and Agent Lozano testified that the he was unfamiliar with the highways in the area, ROA.79; that the driver's behavior of gradual swerving, slowing down, looking straight ahead as well as in her mirrors, and speaking with others in her vehicle did not support a finding of reasonable suspicion, ROA.81; and that there was no evidence that the appearance of the SUV supported an inference of suspicion. ROA.83.

After considering these factors, the district court concluded that "the agents had reasonable suspicion to conduct this roving traffic patrol stop" in this "close case." ROA.87.

Following the district court's denial of her suppression motion, Ms. Sanchez Torres and the government entered into a conditional guilty plea agreement that preserved her right to appeal the denial of her suppression motion.  ROA.95.  In exchange, she pleaded guilty to Count One.  ROA.92-106, 317-18.  At sentencing, Ms. Sanchez-Torres received a sentence of time-served, which equaled about 8 months' custody.  ROA.326, 329.  She now appeals.

## SUMMARY OF THE ARGUMENT

The stop of Ms. Sanchez-Torres's SUV by Border Patrol agents was not based on "reasonable suspicion" as required by the Fourth Amendment. Agents on a roving border patrol may stop a vehicle only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the occupants of the vehicle are engaged in or about to engage in criminal activity. Mere hunches cannot justify a stop. While Ms. Sanchez-Torres was driving in an area known for alien trafficking and in which there had been evidence of recent trafficking, the only suspicious factors identified as to her vehicle in particular were that: 1) one agent had seen three adults in the car while another had seen two; and 2) the back seat passenger had her hands up as if adjusting her hair or to avoid being seen. These factors do not support a reasonable suspicion that the occupants of Ms. Sanchez-Torres's vehicle were involved in illegal activity. This Court should reverse the district court's order and vacate Ms. Sanchez-Torres's conviction.

## ARGUMENT

**ISSUE RESTATED:** The district court erred in denying Ms. Sanchez-Torres's motion to suppress because the Border Patrol Agents who stopped the vehicle she was driving lacked reasonable suspicion that her vehicle was involved with illegal activities.

### A.    Standard of review

Whether a Border Patrol agent had reasonable suspicion to stop a vehicle is a legal question subject to de novo review. *United States v. Nichols*, 142 F.3d 857, 864 (5th Cir. 1998) (citing *Ornelas v. United States*, 517 U.S. 690, 698-99 (1996)). The district court's factual findings are reviewed for clear error. *United States v. Zavala*, 541 F.3d 562, 573-74 (5th Cir. 2008).

### B.    Legal background

The Fourth Amendment prohibits "unreasonable searches and seizures," U.S. Const. amend. IV, and its protections extend to brief investigatory stops of vehicles by Border Patrol agents on roving patrol. *United States v. Cortez*, 449 U.S. 411, 427 (1981); *accord United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). "To temporarily detain a vehicle for investigatory purposes, a Border Patrol agent . . . must be aware of specific articulable facts together with rational inferences from those facts, that warrant a reasonable suspicion that the vehicle is involved in illegal activities[.]" *United States v. Rangel-Portillo*, 586 F.3d 376, 379 (5th Cir. 2009) (citation and internal quotation marks omitted). "The government has the burden of proving the specific and articulable facts

that support the reasonableness of the suspicion." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014).

The Supreme Court has emphasized that the foundation of its investigative-detention jurisprudence is that reasonable suspicion must be particularized to the person being detained, that is, when combined an officer's "objective observations," knowledge of "the modes or patterns of operations of certain kinds of lawbreakers," and "inferences and deductions" from this information, "must raise a suspicion that the particular individual being stopped[, here Ms. Sanchez-Torres,] is engaged in wrongdoing." *Cortez*, 449 U.S. at 418. The reasonableness of an agent's suspicions are limited, however, by what is objectively reasonable to deduce from the totality of the circumstances. *See id.* at 368 (finding that it was unreasonable for the agent to suspect that fresh mud on a vehicle, under the totality of the circumstances, meant that the vehicle had crossed the border recently).

To determine whether reasonable suspicion exists for a roving patrol stop, this Court considers the factors outlined by the Supreme Court in *Brignoni-Ponce*, which include: (1) the area's proximity to the border; (2) characteristics of the area; (3) usual traffic patterns; (4) the agents' experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle; (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers and their appearance and behavior. *United States v. Cervantes*, 797 F.3d

12

326, 329 (5th Cir. 2015). "[R]easonable suspicion is not limited to any or all of these factors," *United States v. Melendez-Gonzalez*, 727 F.2d 407, 411 (5th Cir. 1984), and this Court has repeatedly cautioned against taking a "heads I win, tails you lose" approach to the facts that support reasonable suspicion where the "driver always loses." *United States v. Moreno-Chaparro*, 180 F.3d 629, 632 (5th Cir. 1998); *United States v. Escamilla*, 560 F.2d 1229, 1233 (5th Cir. 1977). In particular, "[a] factual condition that is consistent with alien smuggling does not provide reasonable suspicion if that condition also occurs even more frequently in the law-abiding public." *Rangel-Portillo*, 586 F.3d at 381 (*United States v. Chavez-Chavez*, 205 F.3d 145, 148 (5th Cir. 2000)).

## C.   The Border Patrol agents lacked reasonable suspicion to stop the SUV driven by Ms. Sanchez-Torres.

This Court has recognized that "[p]roximity to the border is a 'paramount factor'" when assessing whether law enforcement had reasonable suspicion to suspect a particular vehicle's involvement with illegal smuggling. *United States v. Olivares-Pacheco*, 633 F.3d 399, 402 (5th Cir. 2011) (citing *United States v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999)). Similarly, "[i]f there is no reason to believe that the vehicle came from the border, the remaining [*Brignoni-Ponce*] factors must be examined charily." *Id*. (citing *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001)). The district court correctly found that the stop of Ms. Sanchez-Torres "took place over sixty miles from the border," and that there was no information that her vehicle had

13

recently crossed the border. ROA.76. Consideration of the remaining factors – particularly when examined charily – shows that the agents lacked reasonable suspicion to believe the occupants of Ms. Sanchez-Torres's SUV were involved in illegal activity.

While the officers may have had reason to suspect alien smuggling activities in the area the day of the stop, they lacked suspicion linking the occupants of Ms. Sanchez-Torres's SUV to any illegal activity. As the district court found, the area in which Ms. Sanchez-Torres was stopped was a known route for smuggling aliens, ROA.77, and there had in fact been evidence of alien smuggling activity earlier that day, ROA.83-84. However, nothing linked these generalized suspicions to Ms. Sanchez-Torres or her SUV.

The district court found only two facts specific to the SUV that were potentially relevant to a reasonable-suspicion analysis: 1) that Agent Benavides saw two adults in the SUV when she passed it while Agent Lozano saw three adults while trailing it; and 2) that Agent Lozano saw the rear passenger with her hands raised near her head. ROA.86.

Even these two facts point in opposite directions. Agent Benavides stated that, while passing the SUV by driving in the lane for oncoming traffic, she saw only the driver and passenger. ROA.167. Agent Lozano immediately corrected her that there were three adults in the vehicle. ROA.167. Indeed, Agent Lozano testified that it was

this third adult in the backseat who had her hands up by her head. ROA.98. Neither testified that they saw any occupant slouching down or ducking from view. *Cf. United States v. Soto*, 649 F.3d 406, 410 (5ᵗʰ Cir. 2011) (noting that slouching is "relevant," but "not sufficient to justify a stop"). It makes little sense to infer that the rear passenger was attempting to avoid being seen by Agent Benavides while conspicuously waiving her hands near her head.

In addition, Agent Lozano's observation that the rear passenger had her hands by her head does not support an inference that she was attempting to avoid being seen. The Court considered a similarly unsupported inference in *United States v. Olivares-Pacheco*, when agents testified that they had seen a passenger point at a field and that the vehicle's other passengers looked in the direction indicated. 633 F.3d at 401. The agents went on to suggest that this was "'an obvious attempt to avoid making eye contact.'" *Id*. While crediting the district court's factual finding that the pointing and observing had occurred, this Court rejected the agents' unsupported inference that such behavior was suspicious: "The fact that one of the passengers pointed to an open field does not signify suspicious behavior any more than it constitutes innocent behavior – it is just unremarkable behavior on a road trip." *Id*. at 403.

Not only is Agent Lozano's observation of a passenger with hands by her head an observation of similarly unremarkable behavior, it does not logically support an inference that the passenger was doing this to avoid being seen. Importantly, Agent

Lozano was behind the SUV at the time he observed this hand-raising activity. ROA.214. It remains unexplained why a car's passenger, who might be seeking to avoid detection as being illegally present in the United States, would seek to evade detection from one officer driving on the opposite side of the car and another following by choosing to "raise[] their arms playing with their hair." ROA.214. This action supports no inference of unlawful activity.

The district court correctly concluded that none of the remaining *Brignoni-Ponce* factors supported a belief that the SUV's occupants were involved in illegal activity. There was no evidence that the SUV's presence in the area was unusual, ROA.77; the agents were inexperienced and one had confirmed he was unfamiliar with the highways in the area, ROA.79; the driver's behavior in failing to look at the agents, looking in her mirrors, reducing speed, and slightly swerving were not suspicious, particularly in light of the agent's behavior of passing the SUV in the lane for oncoming traffic, driving in front of the SUV, and then pulling off to the side of the road, ROA.80-81; and nothing about the appearance of the "kind of dirty" SUV was indicative of illegal activity. ROA.83.

The facts known to Agent Lozano at the time he stopped the SUV driven by Ms. Sanchez-Torres do not come close to constituting reasonable suspicion under the Fourth Amendment. As this Court stated in *United States v. Melendez-Gonzalez*, 727 F.2d 407, 412 (5th Cir. 1984): "[t]he absence in this case of certain factors which have

16

been considered persuasive in the past in judging the validity of a stop by a roving border patrol" leads to the conclusion "that the stop was illegal."

**D.   The evidence derived from the stop must be suppressed**

"Evidence derived from an unreasonable search or seizure generally must be suppressed under the fruit-of-the-poisonous-tree doctrine." *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (citing *United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013)).

Here, but for their illegal seizure of Ms. Sanchez-Torres, border patrol would not have known an undocumented immigrant was traveling in the back of her car, nor would they have had a statement from her admitting to transporting an undocumented immigrants and expecting to be paid for driving her. *See* ROA.214. The evidence from the stop and Ms. Sanchez-Torres's statements must be suppressed as fruit of the poisonous tree. *See Alvarado-Zarza*, 782 F.3d at 249.

## CONCLUSION

For the reasons stated, this Court should reverse the order denying Ms. Sanchez-Torres's motion to suppress, vacate her conviction and sentence, and remand this case for further proceedings.

Respectfully submitted,

s/ Philip G. Gallagher
PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas
Attorney for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone:  (713) 718-4600

## CERTIFICATE OF SERVICE

I certify that on November 14, 2025, this brief was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF system.

s/ *Philip G. Gallagher*
PHILIP G. GALLAGHER

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,503 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 (current version) software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3.      This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because the brief has been redacted of any personal data identifiers.

4.      This brief complies with the electronic submission of 5th Cir. R. 25.2.1 because this brief is an exact copy of the paper document.

5.      This brief is free of viruses because the brief has been scanned for viruses with the most recent version of a commercial virus scanning program.

s/ *Philip G. Gallagher*

PHILIP G. GALLAGHER

20